UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GILBERT P. HYATT**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES PATENT AND TRADEMARK OFFICE**, <br><br> Defendant. | Civil Action No. 18-cv-2800 (TSC) |

## MEMORANDUM OPINION

Plaintiff Gilbert Hyatt sued the United States Patent and Trademark Office ("PTO"), challenging the PTO's decision to categorize his Freedom of Information Act ("FOIA") request as being for commercial use and therefore ineligible for a fee waiver. Compl. ¶¶ 32-41, ECF No. 1. Hyatt has moved for summary judgment, ECF No. 19, and the PTO has cross-moved for summary judgment, ECF Nos. 23, 24. Also pending are Hyatt's two duplicative motions for leave to file a document under seal, ECF Nos. 20 and 25, and his motion for an order on his motion for summary judgment, ECF No. 33. The court will **DENY** Hyatt's motion for summary judgment, ECF No. 19, and **PARTIALLY GRANT and PARTIALLY DENY** the PTO's cross-motion for summary judgment, ECF No. 23. The court will remand Hyatt's fee categorization decision to the PTO for further findings. The court will **GRANT** Hyatt's motion for leave to file documents under seal, ECF No. 25. Finally, the court will **DENY** Hyatt's duplicative motion for leave to file a document under seal, ECF No. 20, and motion for an order as moot, ECF No. 33.

## I.     BACKGROUND

Hyatt and the PTO have a long history involving Hyatt's patent claims.[1] But this case concerns what—if anything—Hyatt should pay for a FOIA request to the PTO.

### A. Statutory Framework

FOIA requires federal agencies to provide copies of certain agency records to public requesters. *See* 5 U.S.C. § 552(a)(3)(A). Once a requester "reasonably describe[s]" the records sought, the agency must make its own "reasonable efforts to search for the records" responsive to the request. *Id.* at § 552(a)(3)(A), (C), (D). After reviewing the requested records, the agency may withhold a record for several statutorily defined reasons. *Id.* § 552(b).

The FOIA process can be costly, and agencies may defray their search, duplication, and review costs by charging fees. *Id.* § 552(a)(4)(A)(iv). Those fees vary based on the requester's intended use of the information: commercial requesters are charged for search, duplication, and review costs; educational, scientific, or news media requesters are charged only for duplication; and all other requesters are charged for search and duplication. *Id.* § 552(a)(4)(A)(ii)(I)-(III).

If the charges are estimated to be over $20.00, the PTO will first issue an estimate to the requester. 37 C.F.R. § 102.11(e). If the charges are estimated to be over $250.00, the requester

---

[1] Including this case, Hyatt has sued the Patent and Trademark Office 20 times in this district alone. *See Morinville v. PTO*, No. 19-cv-1779 (D.D.C. June 18, 2019); *Hyatt v. PTO*, No. 18-cv-00234 (D.D.C. Feb. 1, 2018); *Hyatt v. Hirshfeld*, No. 09-cv-01872 (D.D.C. Sept. 25, 2009); *Hyatt v. Hirshfeld*, No. 09-cv-01869 (D.D.C. Sept. 25, 2009); *Hyatt v. Hirshfeld*, No. 09-cv-01864 (D.D.C. Sept. 25, 2009); *Hyatt v. Hirshfeld*, No. 05-cv-02310 (D.D.C. Nov. 18, 2005); *Hyatt v. Vidal*, No. 05-cv-00834 (D.D.C. Apr. 22, 2005); *Hyatt v. Vidal*, No. 05-cv-00310 (D.D.C. Feb. 9, 2005); *Hyatt v. Vidal*, No. 05-cv-00309 (D.D.C. Feb. 9, 2005); *Hyatt v. Vidal*, No. 04-cv-01802 (D.D.C. Oct. 15, 2004); *Hyatt v. Vidal*, No. 04-cv-01496 (D.D.C. Aug. 31, 2004); *Hyatt v. Vidal*, No. 04-cv-01222 (D.D.C. July 15, 2004); *Hyatt v. Vidal*, No. 04-cv-01139 (D.D.C. July 1, 2004); *Hyatt v. Vidal*, No. 04-cv-01138 (D.D.C. July 1, 2004); *Hyatt v. Vidal*, No. 03-cv-01375 (D.D.C. June 24, 2003); *Hyatt v. Vidal*, No. 03-cv-01283 (D.D.C. June 13, 2003); *Hyatt v. Vidal*, No. 03-cv-01280 (D.D.C. June 13, 2003); *Hyatt v. Vidal*, No. 03-cv-00901 (D.D.C. Apr. 16, 2003); and *Hyatt v. Vidal*, No. 03-cv-00108 (D.D.C. Jan. 22, 2003).

must pay the fees before the PTO will begin to process the request. *Id.* § 102.11(i)(2). A FOIA requester may ask that the estimated fees be partially or completely waived if (1) disclosure "is in the public interest because it is likely to contribute significantly to public understanding" of government operations, and (2) the requester's use is not primarily commercial. 5. U.S.C. § 552(a)(4)(A)(iii). The agency decides whether to waive fees and promulgates "procedures and guidelines for determining when [FOIA] fees should be waived or reduced." *Id.* § 552(a)(4)(A)(i). The PTO has thus developed detailed regulations defining terms and costs for FOIA requests. 37 C.F.R. § 102.11. A requester may appeal an adverse fee decision, including the denial of a request for a fee waiver, to the PTO's Office of General Counsel. *Id.* at §§ 102.7(b), §102.10.

B. **Hyatt's Requests**

Hyatt submitted his first FOIA request to the PTO on February 12, 2018, seeking eight tranches of records related to his patent applications from various PTO offices, departments, and 70 PTO employees. Compl., Ex. A., ECF No. 1-5. The PTO classified Hyatt's request as for commercial use and estimated that the processing cost would be $3,029,782.00 for search, review, and duplication of the requested records. *Id.*, Ex. C at 2, ECF No. 1-7. Hyatt was "surprised" at this estimate and requested a discussion with the PTO to understand how it arrived at the estimate so that he could "reasonably respond and tailor" his request. *Id.* Ex. D. at 2, ECF No. 1-8. After that discussion, Hyatt narrowed one of the eight subparts significantly, and withdrew the remaining seven subparts. *Id.*, Ex. 10 at 3-4. He also challenged the PTO's commercial use classification, stating that the nature and purpose of his request was to

> ascertain the extent and details of the violation of his constitutional and statutory rights by the PTO and PTO personnel and to inform the public, through publication, about PTO important operations that have not been meaningfully

disclosed to date and about potentially serious misconduct by a government
agency and its personnel.

*Id.* at 4. In response, the PTO—again designating Hyatt as a commercial user and denying his fee waiver request—re-estimated the fees for his request at $131,019.00. *Id.*, Ex. G at 7, ECF No. 1-11. Hyatt formally appealed his designation as a commercial user and the fee waiver denial to the PTO's Office of the General Counsel, *id.*, Ex. H, ECF No. 1-12, which rejected his appeal. *Id.*, Ex. J, ECF No. 1-15. Hyatt then filed this action, seeking a judicial determination that he is not a commercial user and is entitled to a total fee waiver, as well as costs and reasonable attorneys' fees under 5 U.S.C. § 552(a)(4)(E)(i).

## II. LEGAL STANDARD

### A. Summary Judgment and FOIA

Most FOIA cases are resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In interpreting the FOIA, the court owes no deference to specific agency regulations, but it may "consult such regulations to the extent they are helpful and not inconsistent with the statutory text." *Liberman v. U.S. Dep't of Transp.*, 277 F. Supp. 3d 1, 8 (D.D.C. 2016) (quoting *Cause of Action v. FTC*, 799 F.3d 1108, 1115 (D.C. Cir. 2015)).

### B. Fee Waivers

A court's review of an agency's fee waiver decision is *de novo,* but it may only rely on the administrative record. 5 U.S.C. § 552(a)(4)(A)(vii). The requester bears the burden of proving that they are entitled to a fee waiver. *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).

C. <u>Use Category Determinations</u>

The parties disagree on the standard of review for an agency's determination of a requester's fee category. *See, e.g.*, *Elec. Priv. Info. Ctr. v. U.S. Dep't of Def.*, 241 F. Supp. 2d 5, 8-9 (D.D.C. 2003) (discussing statutory ambiguity about whether standard is arbitrary and capricious or *de novo*). The PTO argues the *de novo* standard used to review fee waiver decisions does not necessarily extend to an agency's decision on a requester's intended use. Def.'s Cross-Mot. for Summ. J. at 26-29, ECF No. 23 ("Def.'s MSJ"). It contends that the court should apply the APA's "arbitrary and capricious" standard, *see* 5 U.S.C. § 706(a)(2)(A), as courts did before a 1986 FOIA amendment. Def.'s MSJ at 26-27 (referencing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570 § 1804(b)(1), 100 Stat. 3207, 3207-50); *see also Jud. Watch, Inc. v. U.S. Dep't of Just.*, 122 F. Supp. 2d 5, 11 (D.D.C. 2000) (applying arbitrary and capricious standard). Hyatt contends that based on cases from this district applying the *de novo* standard and canons of statutory construction "the best reading of FOIA is that categorization determinations . . . are governed by the *de novo* review provision". Pl.'s Reply at 14-15, ECF No. 26 (citing *Ctr. for Pub. Integrity v. U.S. Dep't of Health & Hum. Servs.*, No. 06-1818, 2007 WL 2248071 at *3 n.2 (D.D.C. Aug. 3, 2007)).

Courts are increasingly applying the *de novo* standard for categorization determinations. *See, e.g.*, *Long v. Dep't of Homeland Sec.*, 113 F. Supp. 3d 100, 103 (D.D.C. 2015); *Brown v. U.S. Pat. and Trademark Off.*, 445 F. Supp. 2d 1347, 1353 (M.D. Fla. 2006); *Ctr. for Pub. Integrity*, 2007 WL 2248071 at * 3 n.2; *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 133 F. Supp. 2d 52, 53 (D.D.C. 2000). But another court in this Circuit has applied the arbitrary and capricious standard. *See Jud. Watch, Inc.*, 122 F. Supp. 2d at 11.

The court need not decide this issue, however, because its ruling would be the same under either the stricter *de novo* standard or the more deferential arbitrary and capricious

standard. *See, e.g.*, *Elec. Priv. Info. Ctr.*, 241 F. Supp. 2d at 9 (citing *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1383 (D.C. Cir. 1989) (declining to choose between either standard when "the outcome of [the] case is the same under either standard.").

### III. ANALYSIS

A. **Count 1: Fee Waiver**

Citing *Cause of Action v. F.T.C.*, Hyatt argues that he is entitled to a fee waiver because disclosure of the information he seeks would "(1) shed light on 'the operations or activities of the government;' (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" 799 F.3d at 1115 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)); *see also* Pl.'s Reply at 2 (citing *Id.*).

Because the PTO does not dispute that the requested disclosure would "shed light on 'the operations or activities of the government," Def.'s MSJ at 8, the court moves directly to the second factor: the likelihood that the disclosure would "contribute significantly to public understanding" of government operations or activities. *Id.* That inquiry assesses: (1) the "degree to which [public] understanding of government activities will be advanced by seeing the information" and (2) "the extent of the public that the information is likely to reach." *Cause of Action*, 799 F.3d at 1116 (internal quotation marks omitted). A requester must show with "reasonable specificity" and in "non-conclusory" terms that they are entitled to a fee waiver, keeping in mind the general principle that "fee-waiver applications are to be 'liberally construed' in favor" of requesters. *Nat'l Sec. Counselors v. U.S. Dep't of Just.*, 848 F.3d 467, 473 (D.C. Cir. 2017) (quoting *Jud. Watch, Inc. v. Rossotti*¸ 326 F.3d 1309, 1310 (D.C. Cir. 2003)).

i. Advancing Public Understanding

Hyatt asserts that the records he requests would contribute to public understanding because the records would shed light on "the way that the PTO treats patent applicants, about

government misconduct, about government spending on the operations and activities at issue, and about the agency's processing of long-pending patent applications." Compl. Ex. F at 4, ECF No. 1-10. To that end, he seeks six years' worth of records from two heads of a PTO unit he claims was "principally focused on his applications and a set of policies carried out" by that and other PTO divisions. *Id*. But Hyatt neither states with reasonable specificity how these records would advance the public understanding of the PTO's operations, nor the extent to which the public would be appraised of those operations; instead, he simply states in conclusory fashion that the public would have an "overwhelming interest" in learning about the PTO's operations through the lens of his own claims. Compl. Ex. F at 4.

Certainly, as Hyatt argues, the public's interest in agency operations may be advanced when the information sought sheds light on unethical or illegal activity. *See, e.g.*, *Rossotti*¸ 326 F.3d at 1313 ("the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted.") (internal citation omitted). But the link between the requested records and any alleged malfeasance must consist of more than "bare allegations." *See Citizens for Resp. and Ethics in Washington v. U.S. Dep't of Just.*, 602 F. Supp. 2d 121, 129 (D.D.C. 2009) (quoting *Klein v. Toupin*, No. 05-0647, 2006 WL 1442611 at *4 (D.D.C. May 24, 2006)). Thus, in *Rossotti*—where the requester identified a conflict-of-interest waiver form executed by an IRS Commissioner, and requested records related to any decisions or communications that flowed from that waiver—the request was specific and directed enough to advance public understanding of government activities. 326 F.3d at 1313. By contrast, in *Klein,* a requester alleging PTO misconduct who made only conclusory arguments about potential malfeasance did not state sufficiently how the public's understanding would be advanced by the information requested. *Klein*, 2006 WL 1442611 at *4.

Hyatt's request is more akin to the situation in *Klein* than *Rossotti*. He claims that the records he seeks address his concerns that "the PTO is not treating [his] patent applications fairly and that the PTO has established policies and procedures that are intended to preclude [him] from ever obtaining patent protection." Compl. at 4, ¶¶ 17-18. But Hyatt offers nothing more in support of this bare allegation, which is confined to his own patent applications. His Declaration fails to describe with reasonable specificity or in a non-conclusory fashion why the 6 years of records he seeks shed any light on potential government malfeasance. Instead, Hyatt simply includes as exhibits tranches of records from his ongoing litigation against the PTO and countless articles describing it. Although the record should be liberally construed in favor of a requester, the court cannot identify, and Hyatt does not clarify, how the requested records would advance public understanding of potential malfeasance. Mere suspicion and a desire to ascertain the extent and details of any wrongdoing is not sufficient grounds for a fee waiver under the *Cause of Action* test.

    ii.    <u>Extent of the Public the Information is Likely to Reach</u>

Hyatt also fails to meet the second factor of the inquiry: that the extent of the public reached by the promulgated information be significant enough to merit a fee waiver. He states that he will make the requested information available to the American Center for Equitable Treatment, "a non-profit corporation in which Mr. Hyatt is a member," and will publish the records at a website he maintains, "ptomisconduct.com." Compl. Ex. 4, Hyatt Decl. ¶¶ 10-11. But again, Hyatt fails to show with reasonable specificity and in non-conclusory terms that this publication will "disseminate the disclosed records to a reasonably broad audience of persons interested in the subject." *Nat'l Sec. Counselors*, 848 F.3d at 474 (quoting *Cause of Action*, 799 F.3d at 1116).

This second factor is not a high bar. The court should not question the believability of a requester's stated ability to disseminate its material to a wide audience. *Cause of Action*, 799 F.3d at 1116. Nor should the court impose some *de minimis* level of audience reach, whether through the number of outlets in which the information is published the number of people reached. *Id.* at 1116-17. But the requester must produce at least some information "demonstrating its ability to disseminate the disclosures." *Nat'l Sec. Counselors*, 848 F.3d at 474 (citing *Cause of Action*, 799 F.3d at 1116). Thus, a requester who fails to provide any information whatsoever "about the size of its audience or the amount of traffic received by its website[s]" has not shown they qualify for a public interest fee waiver. *Id.*

Defendants correctly point out that Hyatt has provided no specific information about his ability to distribute the requested records. Def.'s Cross-Mot. for Summ. J. at 15-17. His Declaration merely states that there is a "reasonably broad audience of persons interested in the subject," and that some requested records may implicate programs that have "been the subject of extensive press coverage, congressional inquiries, and controversy within the patent community." Compl. Ex. H, Hyatt Decl. at 4, 10; *see also id.* Ex. H., Ex. GG (articles describing Hyatt's past litigation with the PTO). Certainly, Hyatt and his ongoing litigation have received news coverage over the years. *Id.* And the United States Senate has inquired about possible improvements to the patent process. *Id.*, Ex. H., Ex. II, *Oversight of the U.S. Patent and Trademark Office: Implementation of the Leahy-Smith America Invents Act and International Harmonization Efforts: Hearing Before the S. Comm. of the Judiciary*, 112th Cong. (2012) (hearing on implementation of bill reforming patent process without mention of Hyatt). But notoriety does not replace specificity. *See Nat'l Sec. Counselors*, 848 F.3d at 474 (a fee-waiver applicant must be "actively engaged" in an effort to disseminate the records to a wide

audience). Conclusory statements do not establish that the records sought will be distributed to a sufficient audience. Hyatt thus has not shown how the requested records would advance the public understanding of government operations. His motion for summary judgment on his fee waiver claim (count 1) will therefore be denied, and the PTO's cross-motion for summary judgment as to count 1 will be granted.[2]

B. **Count 2: Commercial Use Determination**

Because the PTO classified Hyatt's request as for commercial use, it assessed fees for "reasonable standard charges for document search, duplication, and review." *See* Compl. Ex. G. at 4-5, ECF No. 1-11; 5 U.S.C. § 552(a)(4)(A)(ii)(I). Hyatt challenges that classification, arguing that he should only be charged for document search and duplication fees, because he is neither a commercial nor a media user. *See* Compl. ¶¶ 7, 39-41.

Regardless of the standard of review to be applied to Hyatt's request, the court is limited by the administrative record. *See, e.g.*, 5 U.S.C. § 552(a)(4)(A)(vii) (when reviewing *de novo*, "the court's review of the matter shall be limited to the record before the agency"); *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015) ("It is a 'foundational principle of administrative law' that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action.'").

The administrative record here lacks sufficient information regarding the basis of the PTO's decision to deny Hyatt's request. Hyatt stated that he intends to use the requested records to "ascertain and publicize the extent and details of the unusual treatment by the PTO of my

---

[2] Because Hyatt does not qualify for a fee waiver on this ground, the court need not analyze if the requested disclosure would be "primarily in his commercial interest." *Cause of Action*, 799 F.3d at 1115.

applications."  Compl. Ex. F, Hyatt Decl. ¶ 6.  The PTO reasoned that because "Hyatt's preferred venue for pursuing his allegations [against the PTO] is litigation" and "Hyatt has a significant financial [interest] in his litigation against the agency," the requested records must be for commercial use.  Compl., Ex. J at 9-10, ECF No. 1-15.  But the PTO provides no support for this conclusion, declaring simply that Hyatt's statements bear "little weight" and that "there is reasonable cause to doubt his stated use" because much of Hyatt's ongoing litigation "almost completely focuses on getting his patents issued."  *Id.* Ex. G at 5.

While it is true that Hyatt's many lawsuits against the PTO seek to advance his commercial interest in getting his patents issued, the PTO has not offered any support for its conclusion.  Not all litigation derived from FOIA requests is for commercial benefit.  *See, e.g.*, *Cause of Action*, 799 F.3d at 1118 (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987) ("[i]nformation helpful to a tort claim furthers a requester's interest in compensation or retribution, but not an interest in commerce, trade, or profit"); *McClain v. U.S. Dep't of Just.*, 13 F.3d 220 (7th Cir. 1993) (seeking documents to further a challenge to a conviction is not a commercial interest)).  Consequently, the administrative record is insufficiently developed for the court to properly review the PTO's fee classification decision.

When an agency's grounds for taking an action are "inadequate," the court should remand to the agency.  *Regents*, 140 S. Ct. at 1907-08.  The agency then may either (1) offer a "fuller explanation of the agency's reasoning at the time of the agency action,'" *Id.* (quoting *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990) (emphasis in original)), or (2) "'deal with the problem afresh' by taking new agency action," *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).  The court will therefore remand the matter to the PTO to further develop the record or take new action.

## IV.    CONCLUSION

For the foregoing reasons, the court will **DENY** Hyatt's motion for summary judgment, ECF No. 19, and **PARTIALLY GRANT and PARTIALLY DENY** the PTO's cross-motion for summary judgment, ECF No. 23.  The court will remand Hyatt's fee categorization to the PTO for further action.  The court will **GRANT** Hyatt's motion for leave to file documents under seal, ECF No. 25.  Finally, the court will **DENY** Hyatt's duplicated motion for leave to file a document under seal, ECF No. 20, and motion for an order as moot, ECF No. 33.  The court will also order the parties to meet and confer to submit a joint status report proposing a briefing schedule for this case moving forward.  A corresponding Order will accompany this Memorandum Opinion.

Date: May 27, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge